# IN THE UNITED STATES DISTRICT COURT
## FOR THE SOUTHERN DISTRICT OF TEXAS
### HOUSTON DIVISION

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | § | |
| | § | |
| v. | § | CRIMINAL NO. H-10-444 |
| | § | |
| WILLIAM SOLOMON LEWIS | § | |

## MEMORANDUM AND ORDER

Before the Court is the Motion to Suppress filed by Defendant William Solomon Lewis [Doc. # 20] ("Motion").  The Government has filed a Response in opposition to the Motion [Doc. # 22] ("Response").  An evidentiary hearing was held on November 18, 2010, at which the Government called two witnesses.  Rather than Defendant calling a third police officer who was not present, the parties stipulated to several matters.  Defendant was permitted thereafter to file a Reply [Doc. # 27].  The Government neither filed a Sur-Reply nor requested additional time to do so.  The matter is now ripe for decision.  The Motion is **DENIED**.

## I.    FACTUAL FINDINGS

In summary, Defendant seeks to suppress the items (including the firearm that is the subject of the pending indictment) found during a search of his car which was conducted in conformity with a search warrant.  More specifically, Defendant complains that the police officers should not have read, taken and used as the basis of

P:\ORDERS\1-CRIMIN\2010\10-444.Supp.Mtn.1.wpd   101221.0849

an investigation several documents found in the trunk of his car during an inventory search after he was arrested on a valid traffic stop.

At the hearing, the Government called as witnesses Spring Valley Police Department ("SVPD") Officers J.C. Flores and Dennis Book. Defendant thereafter requested to call Officer Jason Knox, who actually had found the papers while in Officer Book's presence. Officer Book wrote the inventory as Knox searched the trunk and called out what he saw. Officer Knox was not present at the hearing.[1] The Government stipulated, solely for the purpose of the suppression motion, that the police officers removed 21 sheets of paper from an open box in the trunk of Defendant's vehicle, reviewed the documents, and brought them to the station house for use in an investigation. Defendant's counsel waived the appearance of Officer Knox. Defendant did not call any other witnesses.

The Court credits the testimony of Officers Flores and Book, and accepts the parties' stipulation.

The evidence reveals the following events occurred. On Friday, April 30, 2010, while at a stop sign, Officer Flores noticed a maroon car in the 8600 block of Westview Street, Houston, Texas. The maroon car was in an oncoming lane of traffic

---

[1]     Defendant had not requested that the Government arrange for his attendance nor subpoenaed him to attend.

but was also stopped at the intersection.  It was evident from a distance that the maroon vehicle had an expired registration sticker.  Flores pulled the vehicle over in the 1400 block of Cedarbrook, a residential street.  Defendant was the driver of this vehicle.  Flores verified that the vehicle registration, showing a date of May, 2007, was expired and determined that the inspection sticker also had expired.  Further, Defendant was unable to provide a driver's license or proof of financial responsibility.  Based on these four traffic violations, Flores placed Defendant under arrest.

Flores noted that Defendant had stepped out of his car without being directed to do so, which was unusual.  Flores instructed Defendant to get back inside until the paperwork for the arrest was completed.

SVPD Officers Dennis Book and J.M. Knox arrived as Flores was filling out the tickets and making the arrest.  As Flores was patting down and handcuffing Defendant, Book heard Defendant say that he had $4,000 in cash in pants in his car, but heard Defendant later change the figure to "$2,500 or $2,600."

Defendant was arrested on a residential street and was the only occupant of the vehicle.  SVPD policy required that Defendant's car be impounded and towed.  There was no secure place nearby for the vehicle to be parked or stored.  After Defendant was removed from the scene, the car was deemed abandoned under SVPD policy, which dictated that the vehicle had to be towed.  It is noted that Defendant had given

two addresses for his residence, neither having any connection to the Spring Valley

area.[2] To complete the impoundment process and to ensure the security of Defendant's

belongings as well as officer and Department safety,[3] Knox and Book inventoried the

vehicle's contents.

SVPD written policy provides that officers are "authorized to have prisoners

vehicles towed by licensed towing companies when:  The prisoner is removed from

the vehicle and no other person in the vehicle is granted custody of the vehicle by the

prisoner…"[4]  Furthermore, the policy specifically directs officers to inventory towed

vehicles, stating: "[a]ll officers will inventory personal effects, valuables, and

contraband found in or on vehicles that are towed to storage on police authorization."[5]

The SVPD manual provides that "[t]he list of items confiscated will be included on

the offense report in as much detail as possible."[6]

Knox inventoried the passenger compartment of the vehicle, which was

---

[2]    Defendant first gave an address that was not in area.  Later he stated he lived at a
       motel.

[3]    The inventory is important for avoidance of suits against the SVPD because there was
       concern that Defendant might later claim that money or other things of value had been
       taken from him.

[4]    GX 2, SVPD Manual, Authorized Towing of Vehicles, Procedures § 10.01.001.

[5]    *Id.,* § 10.01.004(A).

[6]    *Id.,* § 10.01.004(A).

scattered with clothes and other items.  After securing the interior, Knox opened the

trunk.  There, he found a pair of jeans containing approximately $2,661.[7]  Also inside

the trunk was an open box containing a pile of papers, the first of which was in plain

view. That piece of paper was captioned "State's Witness List"[8] for the criminal case

of *The State of Texas v. William Lewis*, Cause No. 59247.  Knox noticed that the

Assistant District Attorney listed at the bottom of the page was Travis A. Townsend.

Knox called to Book, who was writing the inventory that Knox described.  As Knox

was commenting on the paper, wind blew another sheet from the box into the open

area of the trunk.  That paper was handwritten and contained a list of many of the

people on the court witness list, including Townsend with an address different from

the one on the official witness list.[9]  Book and Knox were concerned that the second

piece of paper contained Townsend's home address, and might be some "hit list."

Also, listed on the second paper were approximately fifteen names and addresses that

appeared to be home addresses.  It is stipulated that Knox collected 19 other papers,

secured the vehicle for towing, and took all the papers and the money to the SVPD

station to consult with his superiors.

---

[7]     This sum also included the money Defendant had in his possession.

[8]     *See* GX 4.

[9]     *See* GX 5.

It is further stipulated that Knox consulted with his superiors and spoke with several Assistant District Attorneys, some whose information was listed on the second piece of paper found in Defendant's trunk.  In the course of this analysis, Knox discovered that Defendant had been convicted by a Harris County jury for "Retaliation," that Defendant had been released on an appeal bond, and that many of the people whose personal addresses were on the second sheet of paper were judges and prosecutors in the Harris and Brazoria County Courts.  Significantly, Townsend had been the prosecutor assigned to Defendant's criminal case in Brazoria County.

The following Monday, May 3, 2010, Knox applied for and received a search warrant for Defendant's vehicle.  Inside the vehicle, and pertinent to the case at issue, Knox discovered an L.C. Smith .12 gauge shotgun with a barrel less than 18 inches in length.  Knox executed the return on the warrant and tagged the evidence he had seized.

## II.   ANALYSIS

"The fourth amendment proscribes . . . unreasonable searches and seizures.  To be reasonable a search must normally be conducted pursuant to a warrant, but courts have long recognized an exception to the warrant requirement for so-called 'inventory searches' of automobiles."  *United States v. Andrews*, 22 F.3d 1328, 1333-34 (5th Cir. 1994) (quoting *United States v. Prescott*, 599 F.2d 103, 105 (5th Cir. 1979), and citing

*South Dakota v. Opperman*, 428 U.S. 364 (1976)).   Inventory searches are a "well-defined exception to the warrant requirement of the Fourth Amendment." *Colorado v. Bertine*, 479 U.S. 367, 371 (1987).

"When a car is impounded, the police generally inventory its contents to protect the owner's property while it is in police custody, to protect the police against claims of lost or stolen property, and to protect the police and the public from potential danger." *Andrews*, 22 F.3d at 1334 (quoting *United States v. Gallo*, 927 F.2d 815, 819 (5th Cir. 1991)(citing *Opperman*, 428 U.S. at 369)).   Inventory searches are excepted from the warrant requirement because they serve these "caretaking" purposes, and because they are not designed to uncover evidence of criminal activity.   *See Opperman*, 428 U.S. at 370 & n.5 ("In view of the noncriminal context of inventory searches . . . courts have held-and quite correctly-that search warrants are not required. . . . With respect to noninvestigative police inventories of automobiles . . . the policies underlying the warrant requirement . . . are inapplicable.").

Inventory searches must be conducted according to standard regulations and procedures, consistent with the proper purpose of a noninvestigative inventory search. *Florida v. Wells*, 495 U.S. 1, 4-5 (1990); *Bertine*, 479 U.S. at 374 (1987); *Andrews*, 22 F.3d at 1334 ("Cases dealing with inventory searches have required that such searches be conducted according to standard regulations and procedures, consistent

with the proper purpose of a noninvestigative inventory search."); *see also United States v. Borrego*, 132 F.3d 1456, 1456 (5th Cir. 1997). "[I]nventory policies must be adopted which sufficiently limit the discretion of law enforcement officers to prevent inventory searches from becoming evidentiary searches." *United States v. Como*, 53 F.3d 87, 92 (5th Cir. 1995) (quoting *Andrews*, 22 F.3d at 1336); *see also United States v. Foots*, 340 Fed. Appx. 969, 972 (5th Cir. 2009). The Supreme Court in *Wells* reiterated, however, that "'nothing . . . prohibits the exercise of police discretion so long as that discretion is exercised according to standard criteria and on the basis of something other than suspicion of evidence of criminal activity.'" *Wells*, 495 U.S. at 3-4, (quoting *Bertine*, 479 U.S. at 375). "[R]easonable police regulations relating to inventory procedures administered in good faith satisfy the Fourth Amendment . . . ." *Bertine*, 479 U.S. at 374.

Accordingly, an inventory search of a seized vehicle does not violate the Fourth Amendment where "it is conducted pursuant to standardized regulations and procedures that are consistent with (1) protecting the property of the vehicle's owner, (2) protecting the police against claims or disputes over lost or stolen property, and (3) protecting the police from danger." *United States v. Lage*, 183 F.3d 374, 380 (5th Cir. 1999) (citing *United States v. Hope*, 102 F.3d 114, 116 (5th Cir.1996)); *accord Foots*, 340 Fed. Appx. at 974. The prosecution is not required to "submit evidence

of written procedures for inventory searches; testimony regarding reliance on standardized procedures is sufficient, as is an officer's unrebutted testimony that he acted in accordance with standard inventory procedures." *Id.* (citing *United States v. Como*, 53 F.3d 87, 92 (5th Cir.1995), and *United States v. Bullock*, 71 F.3d 171, 178 (5th Cir.1995)).

Defendant complains initially that his car should not have been impounded. The Court disagrees. Once Defendant was arrested,[10] the vehicle could not reasonably have been left unattended on a residential street with which Defendant had no connection.[11] Defendant was in custody and no other individual was present to take control of the car. The officers could not simply leave the property in the vehicle unprotected.

The officers conducted the inventory of Defendant's vehicle pursuant to reasonable SVPD regulations, not as a "ruse for general rummaging in order to discover incriminating evidence." *See Andrews*, 22 F.3d at 1334. Book testified that the SVPD required officers to conduct inventory searches and to inventory carefully

---

[10]    Defendant does not challenge the validity of his arrest, which was clearly within the officers' authority, given the lack of any current vehicle registration, vehicle inspection, Defendant's driver's license, or proof of financial responsibility. *See* citations in GX 8.

[11]    Indeed, even had the car been left parked on the street, as Defendant seems to suggest, it would have been reasonable for the police to inventory the contents in order to protect the City from a claim of loss or theft of items inside.

to protect the City from claims of lost property. Book's testimony establishes without contradiction that officers would have been within their prerogative to search the entire box of documents in Defendant's vehicle trunk to determine whether there was cash or other valuable personal property that needed to be inventoried. Defendant had been materially inconsistent about the amount of money he claimed to have in the car, and therefore the scope of the search of the documents in the box in Defendant's vehicle was reasonable under the SVPD policy. Indeed, once Knox discovered the two sheets of possibly incriminating evidence, the lists of witnesses with differing addresses, he apparently looked a little further and found 19 additional documents of interest.[12] He then ceased the review and took the documents to his supervisor at the police station.[13] He or Officer Book secured the vehicle. The officers were justified in searching through the papers in the box carefully. *See Andrews,* 22 F.3d at 1335.

The circumstances in *Andrews* are similar to those presented here. The Drug Enforcement Administration (DEA) had defendant Andrews under surveillance for days. *Andrews*, 22 F.3d at 1332. DEA asked local law enforcement to execute a traffic stop because of Andrews's erratic driving (after having visited various local

---

[12]   The Court assumes this from the parties' stipulation that Knox took a total of 21 pages of documents from the car during the inventory search.

[13]   *See* Offense Report, DX 1-A, at 7.

drinking spots). *Id.*  Andrews was arrested for driving under the influence, and the local police conducted a routine inventory search of his vehicle. *Id.*  An officer found a spiral notebook containing diagrams and several names, and the officer determined the notebook could have evidentiary value and turned it over to DEA. *Id.* at 1333. After Andrews's arrest, law enforcement discovered over four thousand tons of marijuana in the fuel tanks of a tugboat associated with Andrews. *Id.*  The diagram in the recovered notebook depicted the tugboat's fuel tanks and the location of the marijuana that was ultimately found. *Id.* Andrews moved to suppress the notebook seized from his vehicle on grounds that the search was unreasonable and in violation of the Fourth Amendment. *Id.*  He further contended that the page-by-page search of the notebook was not mandated by department policy. *Id.* at 1335.

The Fifth Circuit rejected the arguments, noting that an officer's testimony on the motion to suppress established there was a standard policy to conduct an inventory of a vehicle being towed. *Id.* at 1134-35. Affirming the district court's denial of Andrews's motion, the court held that "inventory policies must be adopted which sufficiently limit the discretion of law enforcement officers to prevent inventory searches from becoming evidentiary searches" and that "[b]ecause that requirement is met by the [agency's] inventory search policy, Andrews has not shown that [the officer] violated the Fourth Amendment by searching Andrews' notebook." *Id.* at

1336. The court also concluded that opening a notebook to determine whether valuables might be found between its pages, is consistent with a policy requiring an inventory search to protect the city from claims of lost property. *Id.* at 1335. "Cash, credit cards, negotiable instruments, and any number of other items could be hidden between the pages of a notebook, and could give rise to a claim against the city if lost." *Id.*

In the present case, the SVPD inventory policy is valid.[14] The policy limits the discretion of law enforcement officers, similar to *Andrews*, to inventorying "personal effects, valuables, and contraband found in or on vehicles that are towed to storage on police authorization."[15] The officers are to list on the "wrecker slip" the items left in or with vehicles and "[t]he list of items confiscated will be included on the offense report in as much detail as possible."[16] The SVPD officers followed standard procedure when conducting the inventory of Defendant's vehicle and did not engage in an evidentiary search. At the time of the inventory, Book and Knox had no reason to believe Defendant was engaged in any criminal activity beyond the traffic

---

[14]   There is no meaningful challenge on this point.

[15]   GX 2, SVPD Manual, Authorized Towing of Vehicles, Procedures § 10.01.004(A).

[16]   *Id.*

infractions.  They were simply performing their job pursuant to SVPD regulations.[17]

Indeed, Knox did not even leaf through all the papers, as did the officer in *Andrews*

when he looked through the entire notebook.  Further, before searching the trunk,

Knox was aware of the discrepancy in the amount of money Defendant claimed to

have in the car.  This presented a heightened sense of concern for protection of SVPD

and the City against false claims of theft.  *See Opperman*, 428 U.S. at 369; *Gallo*, 927

F.2d at 819.

The Court concludes Knox was more circumspect than required by the Fourth

Amendment, when he ceased the inventory once he found potentially incriminating

evidence. *Andrews*, 22 F.3d at 1337.  Instead, he approached a neutral, detached

magistrate who determined probable cause was evident and authorized a warrant to

search Defendant's vehicle.

Not meaningfully challenging the physical scope of the inventory search,

Defendant instead argues that it was improper for Knox to actually read the papers he

found, to take them away from the car, or to use them as the basis of further

investigation.  The focus of this argument seems to be the handwritten list of public

officials next to what appeared to the officers to be home addresses.  Knox and others

---

[17]     Knox's actions are even more benign than those of the officer in *Andrews*.  Knox was
not alerted by another investigative agency that Defendant was possibly violating the
law, as was the case when the DEA alerted local police in *Andrews*.

at the police department used these to investigate their source and possible meaning. The officers determined Defendant's criminal history and inquired of people on the handwritten sheet if the addresses listed were their home addresses.[18]  There was concern that the handwritten list might be a "hit list" and that Defendant might be planning to harm those on the list.[19]  The result of this inquiry was Knox's submission of an affidavit in support of a request for a search warrant, which a local judge granted.  There is no contest to the sufficiency of that affidavit.

The Court is entirely unpersuaded by this argument.  Defendant provides no authority that the officers' use of properly seized documents for an investigation is improper or a violation of the Fourth Amendment.  The list was inherently suspicious. Defendant makes no suggestion why a citizen would have a list of public officials with addresses that were not business locations.  Defendant's argument flies in the face of the *Andrews* ruling.  Just as the officers in that case were found to have legitimately used the information they found in the notebook that had been seized during an inventory search, the SVPD officers were permitted to read the papers and conduct an investigation based on the handwritten and other sheets of paper found in the inventory search of Defendant's vehicle.

---

[18]     *See* GX 6, Affidavit in Support of Search Warrant.

[19]     *Id.*

As the Fifth Circuit explained in *United States v. Thompson*, "[o]nce property has been seized with proper justification and is in plain view of governmental officials, the owner no longer has a reasonable expectation of privacy with respect to the property, and it may be seized without a warrant.[20]  837 F.2d 673, 675 (5th Cir. 1988) (footnotes omitted).[21]  To the extent Defendant complains about the officers' discovery of the papers, and in particular the handwritten page, as exceeding the scope of a legitimate inventory search, Defendant's argument is rejected.

### III.   CONCLUSION

For the foregoing reasons, the Court concludes that Defendant's Motion to Suppress [Doc. # 20] should be denied.  It is therefore

ORDERED Defendant's Motion to Suppress [Doc. # 20] is **DENIED**.

SIGNED at Houston, Texas, this 21st of **December, 2010.**

_____
Nancy F. Atlas
United States District Judge

---

[20]   Defendant does not take issue with the adequacy of the search warrant or the supporting affidavit, except insofar as he challenges the right of the officers to use the papers obtained through the inventory search.  Defendant in fact concedes that "[t]o the extent that this Motion to Suppress is based on the four corners of the search warrant affidavit, no hearing is required."  Motion, at 2.

[21]   *See also Andrews*, 22 F.3d at 1333-37 (holding constitutional page-by-page search of notebook during inventory search of automobile and subsequent delivery to DEA); *United States v. Davis*, 496 F.2d 1026, 1031-32 (5th Cir. 1974) (holding that police could constitutionally take briefcase in plain view on impounded automobile's front seat to police station to conduct inventory search).