# IN THE UNITED STATES DISTRICT COURT
# FOR THE SOUTHERN DISTRICT OF TEXAS
# HOUSTON DIVISION

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | § | |
| | § | |
| v. | § | CRIMINAL CASE NO. H-10-444 |
| | § | |
| WILLIAM SOLOMON LEWIS | § | |

## MEMORANDUM AND ORDER

Defendant William Solomon Lewis has been in custody since his arrest by state authorities and subsequent transfer to federal custody to face the gun charge in this case. Defendant seeks release on bond. The case is before the Court on Defendant's Motion for Review and Revocation of Detention Order [Doc. # 10] and his "Further Objection to Detention" [Doc. # 32] (collectively, "Motions"). In the Motions, Defendant seeks reversal of Magistrate Judge Nancy K. Johnson's "Conditional Order of Detention to Take Effect After Defendant is Released From State Custody" [Doc. # 11] ("Detention Order"), which was issued on July 14, 2010, after an evidentiary hearing held on July 8 and 9, 2011, pursuant to 18 U.S.C. § 3142(f) and (g) (the "July 2010 Hearing"). The Government opposes any alteration of the Magistrate Judge's Detention Order.[1]

---

[1] The Government filed responses, with exhibits, to Defendant's Motions on July 22, 2010 [Doc. # 12], and on January 26, 2011 [Doc. # 33].

The Court has considered the parties' oral and written arguments, the exhibits of record, the evidence introduced at a hearing the Court conducted on January 31, 2011 (the "January 2011 Hearing"), and the evidence received at the July Hearing.[2] The Court holds that the Detention Order should not be vacated. Defendant's Motions are **denied**.

Defendant is charged in a one count indictment with possession of an unregistered firearm, an LC 12 gauge shotgun having a barrel less than 18 inches in length, in violation of 26 U.S.C. §§ 5841, 5861(d) and 5871. The Court concludes that Defendant should not be granted bond. The Court adopts the reasoning explained in Magistrate Judge Johnson's Detention Order and makes the following additional findings and conclusions.[3]

## I. LEGAL STANDARDS

### A. District Court's Role

The district court's role in reviewing detention orders was described by the Fifth Circuit in *United States v. Fortna*, 769 F.2d 243, 249 (5th Cir. 1985):

> When the district court, pursuant to 18 U.S.C. § 3145(b), acts on a motion to revoke or amend a magistrate's pretrial detention order, the

---

[2] The Court also has reviewed the Pretrial Services Report.

[3] Defendant complains about a few alleged errors in those findings. The errors, if any, are not material.

court acts *de novo* and makes an independent determination of the proper pretrial detention or conditions for release.

Section 3145 gives the defendant the right, when an order of detention has been entered by a Magistrate Judge, to seek review of that order. It does not require a *de novo* evidentiary hearing. The district court may undertake the review by considering the evidence in the record before the Magistrate Judge. The district court, either from the record before the Magistrate Judge alone or from a record supplemented by the parties, shall independently determine whether pretrial detention is warranted. *See United States v. Westbrook*, 780 F.2d 1185, 1188 n.4 (5th Cir. 1986).

### B. Law on Bond Determinations

Before detention is warranted, the Court must find that the Government has established by clear and convincing evidence that "no condition or combination of conditions will reasonably assure the . . . safety of any other person and the community." 18 U.S.C. § 3142(f)(2); *see also Fortna*, 769 F.2d at 251. Alternatively, the Government must show by a preponderance of the evidence that no condition or combination of conditions will reasonably assure Defendant's appearance in court. *See United States v. Orta*, 760 F.2d 887, 891 (8th Cir. 1985); *Fortna*, 769 F.2d. at 250, 251 n.7.

In determining whether there are conditions of release that will reasonably assure the appearance of the person as required and the safety of any other person and the community, a court is to consider the following factors:

1. The nature and circumstances of the offense charged, including whether the offense involves a narcotic drug;

2. the weight of the evidence against the person;

3. the history and characteristics of the person, including

    a. the person's character, physical and mental condition, family ties, employment, financial resources, length of residence in the community, community ties, past conduct, history relating to drug or alcohol abuse, criminal history, and record concerning appearance at court proceedings; and

    b. whether, at the time of the current offense or arrest, the person was on probation, on parole, or on other release pending trial, sentencing, appeal, or completion of sentence for an offense under Federal, State, or local law; and

4. the nature and seriousness of the danger to any person or the community that would be posed by the person's release.

18 U.S.C. § 3142(g).

Finally, in considering the conditions of release and property potentially available to be forfeited upon failure to appear or potentially available to serve as security for bond, the Court may evaluate the source of property to be designated. The Court may decline to accept the designation or the use as collateral of property that,

because of its source, will not reasonably assure the appearance of the defendant as required. 18 U.S.C. § 3142(g)(4).

## II. ANALYSIS

The United States presented witnesses and argument at the July 2010 hearing. Defendant was represented by counsel at that time and had the opportunity to testify, present witnesses, proffer testimony of other witnesses, and cross examine the United States' witnesses. At the January 2011 Hearing, Defendant was again represented by counsel and presented witnesses. In addition, Defendant's counsel made argument on both occasions concerning Defendant's family, criminal history, and other matters. The Government did not present witnesses on this occasion but cross examined Defendant's mother (Julienne Tillison) and his former wife (Jacqueline Gray), whom Defendant called as his witnesses. The Government also introduced in evidence a handwritten affidavit by Defendant's former wife about Defendant's assault on her and his other threats of serious violence while she was pregnant with Defendant's child. The Government elicited corroborating testimony from Gray about this and other incidents, as well as recorded conversations in which Defendant and Tillison

conspired to mislead the state court about various material matters. The Court also has considered the evidence adduced at the July 2010 Hearing.[4]

Defendant first contends that because he is no longer held in custody by the State of Texas, he should be released. The Court agrees that Defendant is now solely in federal custody, and the Detention Order has become operative. However, this status is only the beginning of the inquiry. The Court must consider the evidence in light of the factors in § 3142(g).

Defendant makes arguments on both the safety of the community and the flight risk prongs of § 3142. The Court is not persuaded in light of Defendant's conduct over the last sixteen years that the Detention Order should be vacated.

The Court first addresses issues pertaining to the safety of the community.

### A. Danger to the Safety of the Community

As to the first two § 3142(g) factors, the Government presented evidence that Defendant in fact possessed the weapon with which he is charged. There is no issue that Defendant did not possess narcotic drugs when he was arrested.

There is substantial dispute between the parties, however, regarding the third and fourth § 3142(g) factors – Defendant's "history and characteristics," whether he

---

[4] The Court credits the facts in the complaint Gray wrote within days of the events during her pregnancy. Moreover, the Court does not credit most of the testimony of Tillison. The evidence of Defendant's and Tillison's plans during the phone calls recorded while Defendant was in custody undermine her credibility.

was on bond when he engaged in pertinent conduct, and the safety of the community if Defendant is released on bond.

Defendant is 33 years old and has an unusually long criminal history. He has engaged in other conduct that leads the Court to find that he presents a risk to the safety of the community. As noted in the Detention Order, Defendant has convictions for resisting arrest (multiple), evading arrest, failure to identify, assault causing bodily injury, unlawfully carrying a weapon, possession of marijuana, criminal mischief, and retaliation. He is currently under indictment for perjury in Brazoria County, Texas. Defendant has been arrested seventeen times and convicted eleven times in the last sixteen years (starting at age seventeen). Some of the convictions are for multiple charges.

Several of Defendant's arrests and convictions occurred while he was on bond or probation, demonstrating that Defendant manifests an inability or lack of intention to comply with standard conditions of supervision.[5] Not long after Defendant was released from a three year felony sentence, he was arrested for failing to identify/giving false information. Although that charge was dismissed, Defendant was arrested less than three months later on a state weapons violation related to the

---

[5] Defendant was in custody for several years during this period.

charge in this case. This charge is based on Defendant's conduct while on an appeal bond on his retaliation conviction.

Defendant asserts there is no risk that he will threaten, injure, or intimidate a prospective witness. The Court is unpersuaded. In March 2010, a Harris County, Texas jury found Defendant guilty of retaliation. This conviction is still on appeal but the evidence underlying that conviction demonstrates at the very least that Defendant is willing to contact and harass a potential witness. At worst, the facts portray an individual who indicates an interest in locating and injuring not only a witness, but a police officer. As Magistrate Judge Johnson noted in the Detention Order, Defendant was on bond when he telephoned a law enforcement officer and told him that he (Defendant) knew where the officer lived. These facts are of particular concern because the instant case involves law enforcement officers' discovery of a handwritten list of assistant district attorneys' and judges' names, as well as their home addresses. This evidence strongly supports the conclusion that Defendant is a danger to the safety of the community.

Reinforcing this conclusion is Defendant's demonstrated lack of respect for the criminal process. During the pendency of the state retaliation case, Defendant sent a letter to the presiding state court judge, addressing her as "Sweetie" and referring to her as a "selfrightious [sic] pig." After a competency evaluation was requested,

Defendant wrote to the state court that she could take all the psychological evaluations and "shove them straight up your *ss!". Defendant thus reveals his lack of respect for court proceedings.

Additionally, in 2008 and 2009 while defendant was detained pending trial in Harris County, he amassed a significant number of disciplinary infractions, many of which were threats of physical harm to officers.[6] Defendant has demonstrated an inability to comply with conditions imposed on him by those in authority.

The Government has established by clear and convincing evidence that Defendant poses a serious threat to the safety of the community.

### B. Flight Risk Analysis

To determine if there is a serious chance Defendant will flee and not make his court appearances, the Court considers his "history and characteristics," such as "his character, physical and mental condition, family ties, employment, financial resources, length of residence in the community, community ties, past conduct, history relating to drug or alcohol abuse, criminal history, and record concerning appearance at court

---

[6] According to these various reports, defendant threatened staff on multiple occasions while already in segregation. One detention officer noted that defendant had made comments stating that he has a list of deputies he dislikes and plans to kill them when he gets out of jail. One month later defendant threatened another detention officer, saying the officer was "marked for death" and that defendant would hunt the officer down and put a bullet in his head. Throughout 2008 and 2009 defendant would degrade and belittle officers while trying to provoke them into an altercation.

proceedings." There is no dispute that Defendant is a United States citizen, who has lived most of his life in the Houston area. His mother, former wife, and child live here. Defendant's relationship with his former wife, however, is often volatile. Defendant has not had meaningful, long term employment. Defendant has financial resources he inherited from his father that he could use to flee.

The Court also finds that Defendant lacks respect for the conditions of bond and the court. Notable is Defendant's conduct when on bond on the state retaliation charge in 2007 – 2010. There is no dispute that Defendant traveled to North Carolina while on bond in that case. Although it is unclear whether there was a "no travel" condition imposed by the state court, the evidence is uncontradicted that when Defendant's bondsman discovered that Defendant was out of state, the bondsman took action to have Defendant brought back to Houston. Indeed, Defendant stated in a 2007 letter to the presiding judge that he then "lived" in North Carolina and owned a house and business out there, facts that Defendant (through counsel and his mother's testimony) now denies. Indeed, Defendant threatened that he would fight any and all attempts for extradition by the court. This Court, accordingly, is unpersuaded by Defendant's argument that his leaving the Harris County area was innocuous.[7]

---

[7] The Court cannot comprehend how Defendant could comply with other conditions to which he was subject while on bond if he were not in the region and able to report to a supervising officer.

Finally, Defendant's mother admitted she and Defendant discussed ways for them and Gray to lie to suit Defendant's purposes.  These schemes reinforce that Defendant lacks respect for the judicial process.

The Court finds that there are no conditions or combination of conditions of release that will reasonably assure the appearance of Defendant in court.  The Court is unpersuaded that Defendant's historical appearances at state court proceedings is a meaningful guide under present circumstances.  Defendant faces a much more severe penalty for the pending charge than he has faced before.  He is currently facing a perjury charge in state court for unrelated conduct.  As a result, his incentive to flee is far greater now than in the past.

## CONCLUSION AND ORDER

The Government has met its burden to prove by clear and convincing evidence that this Defendant poses a danger to the safety of the community.  Additionally, the Government has proven by at least a preponderance of the evidence that there is an unreasonable risk of his flight.  It is therefore

**ORDERED** that Defendant's Motions [Docs. # 10 and # 32] asking this Court to vacate the Detention Order are **DENIED**.

SIGNED at Houston, Texas this 15th day of **February, 2011**.

Nancy F. Atlas
United States District Judge